UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AAMIR SALADIN RUSHDAN,

Plaintiff,

v.

YASSER MANSOUR,[1]

Defendant.

No. 2:24-cv-2183 CSK P

ORDER AND

FINDINGS & RECOMMENDATIONS

Plaintiff Aamir Saladin Rushdan[2] appears pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Defendant's motion for summary judgment is before the Court. As discussed below, the Court recommends that the motion for summary judgment be granted.

I. PROCEDURAL HISTORY

This Court screened plaintiff's original complaint, and found the complaint states a potentially cognizable Eighth Amendment claim against defendant Dr. Yasser Mansour based on

[1] Plaintiff named "Y. Mansoor" as defendant in this action. (ECF No. 1 at 1.) On April 9, 2025, defendant filed an answer as "Y. Mansour." (ECF No. 21 at 1.) Defendant does not dispute that he is the doctor being sued by plaintiff. (ECF Nos. 21, 26.) Thus, the Court will direct the Clerk of the Court to change defendant's name in the court record.

[2] Plaintiff changed his name from Robert S. Woods to Aamir Saladin Rushdan. (Pl. Dep. Tr. 5:2-6.)

plaintiff's allegations that defendant Dr. Mansour refused to treat plaintiff's keloids. (ECF No. 7 at 3.) Plaintiff failed to allege any facts against two "appeals responders" -- S. Gates and E. Davis -- and in light of such failure, this Court could not determine whether plaintiff could state a cognizable claim against them. (Id. at 3-4.) Plaintiff was granted leave to amend to attempt to state cognizable claims against defendants S. Gates and E. Davis or he could elect to proceed solely on his claims against defendant Dr. Mansour. (Id. at 4-6.) On December 11, 2024, plaintiff elected to dismiss defendants S. Gates and E. Davis, who were dismissed on December 18, 2024. (ECF Nos. 10, 11.) Thus, this action proceeds solely on plaintiff's claims that defendant Dr. Yasser Mansour refused to treat plaintiff's painful keloids and resulting infection in violation of plaintiff's Eighth Amendment rights. (ECF No. 11 at 1.)

## II. COMPLAINT

In his verified complaint, plaintiff alleges that defendant Dr. Mansour refused to treat plaintiff's keloids, despite plaintiff's known medical history of painful keloids that quickly develop recurrent infections. (ECF No. 1.) Even though defendant Dr. Mansour was aware of plaintiff's medical history, including knowing the keloids would become infected the next day, defendant Dr. Mansour refused to provide antibiotics or otherwise treat plaintiff's keloids. Instead, defendant Dr. Mansour ordered a blood test to determine if plaintiff had an infection, which plaintiff knew would take days to receive the results. Plaintiff's keloids then became infected, swollen, and oozing pus. Defendant Dr. Mansour then failed to provide plaintiff with results from the blood test, and again failed to provide plaintiff an antibiotic even after the blood test results showed plaintiff had an infection. Plaintiff seeks money damages.

## III. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate

the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled on other grounds as stated in Flood v. Miller, 35 F. App'x 701, 703 n.3 (9th Cir. 2002).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes to 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). A verified complaint may be considered as evidence at the summary judgment stage "if it is based on personal knowledge and if it sets forth the requisite facts with specificity." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By notice filed on October 31, 2025, plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 26-5 (citing Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc)).)

///

///

## IV. THE PARTIES' EVIDENCE

A. Defendant provided the following evidence:

1. Declaration of defendant Dr. Mansour, a primary care physician at California State Prison, Solano ("CSP-SOL"), attaching some of plaintiff's medical records (Exs. 1-3). (ECF No. 26-2.)

2. Declaration of N. Largoza, M.D., Chief Physician and Surgeon at CSP-SOL. (ECF No. 26-3.)

3. Declaration of Caitlin Ryan, defendant's attorney, attaching portions of plaintiff's deposition. (ECF No. 26-4.)

4. Plaintiff's July 18, 2025 deposition.

5. Supplemental declaration of defendant Dr. Mansour, plaintiff's call slip submitted on December 15, 2023, and notes from the nursing staff. (ECF No. 30-1.)

6. Supplemental declaration of Caitlin Ryan, defendant's attorney, providing unredacted copies of previously-submitted Exhibit 3.[3] (ECF No. 30-2.)

B. Plaintiff provided the following evidence:

1. Plaintiff's verified complaint. (ECF Nos. 1 at 6, 16.)[4]

2. October 8, 2023 health care services request form. (ECF No. 29 at 22-23.)

3. Health care grievance submitted December 27, 2023. (Id. at 24-26.)

4. Photocopy of a picture. (Id. at 27.)

5. July 2, 2025 durable medical equipment receipt. (Id. at 29-30.)

6. January 23, 2024 health care services request form. (Id. at 31-32.)

---

[3] Plaintiff objects that defendant redacted certain portions of plaintiff's medical records. (ECF No. 29 at 18.) With their reply, defendant provided counsel's declaration accompanied by an unredacted version of their Exhibit 3, which included the results from the September 29, 2024 blood test results at issue, and noted plaintiff was provided unredacted copies of this evidence in discovery as reflected by their Bates stamp numbering. (ECF No. 30-2.) Plaintiff did not identify any adverse impact from the redactions. (ECF No. 29 at 18.) Given that the white blood cell count results were not redacted, this Court finds that the redactions are not at issue or relevant.

[4] Plaintiff's opposition is styled, "Declaration in Opposition to Defendant's Motion for Summary Judgment." (ECF No. 29 at 1.) However, plaintiff did not sign any part of the opposition under penalty of perjury. (Id. at 6, 20.)

7. Clinic notes from California State Prison, Los Angeles County (dates of entry 2017-2018). (Id. at 33.)

8. "Reasons for Decision" bearing plaintiff's former name and referencing VA. (Id. at 34-35.)

9. Notices from Richard J. Donovan Correctional Facility ("RJD") that plaintiff's March 12, 2021, and February 28, 2022, lab results were reviewed and "all within normal limits." (Id. at 38-39.) The February 28, 2022 notice stated that a chronic care appointment was scheduled for plaintiff, and he would receive a ducat with the appointment time. (Id. at 39.) The March 12, 2021 notice added that no provider follow-up was required. (Id. at 38.)

10. CSP-SOL undated notice that plaintiff's "test results" were evaluated and "are essentially within normal limits or are unchanged and no provider follow up required." (Id. at 40.)

11. CSP-SOL notices that plaintiff's January 27, 2025 and July 9, 2025 test results were evaluated, were essentially within normal limits or unchanged, and no provider follow up required. (Id. at 41-42.)

12. Plaintiff's January 30, 2024 hematology lab results (CSP-SOL). (Id. at 43.)

13. Definitions of Neutrophils, myelocyte, and promyelocyte, and information about lymphocytes, lymphoproliferative disorders, and absolute blasts, printed from Wikipedia. (Id. at 44-48.)

14. Defendant's response to Request For Admission No. 3. (Id. at 50.)

15. UCSF Medical Center after visit summary from March 8, 2013. (Id. at 51.)

16. Incomplete response to Request for Production of Documents No. 7. (Id. at 52.)

17. Plaintiff's February 28, 2024 clinic assessment forms (CSP-SOL). (Id. at 53-54.)

18. Various articles. (Id. at 55-61.)

19. RJD undated notice that plaintiff's culture result reviewed; plaintiff advised to follow up in RN line to check if he was improved with antibiotics, plaintiff was being scheduled

for an appointment, and he would receive a ducat with the appointment time. (Id. at 62.)

20. Illegible progress note from 12/22/2018 encounter. (Id. at 63.)

21. May-June 2012 page from the "Journal of Diabetes and its Complications," entitled "How reliable are cultures of specimens from superficial swabs." (Id. at 64.)

22. Articles from Medline Plus, Merck Manual, Wiley online manual, and National Institute of Health, and Liang Z, Zhang M, Hao Y, et al. (Id. at 5-12.)

23. Copies from defendant's filings. (Id. at 21, 28, 36-37, 49.)

24. June 22, 2026 letter from the National Institutes of Health, National Library of Medicine. (ECF No. 31 at 3-4.)

## V. LEGAL STANDARDS FOR DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

Deliberate indifference is a very strict standard. It is "more than mere negligence." Farmer v. Brennan, 511 U.S. 825, 835 (1994). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. Even civil recklessness -- failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known" -- is insufficient to establish an Eighth Amendment claim. Farmer, 511 U.S. at 836-37 (citation omitted). A prison official will be found liable under the Eighth Amendment when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060).

A difference of opinion between inmate and prison medical personnel -- or between medical professionals -- regarding the appropriate course of treatment does not by itself amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted).

## VI. EVIDENTIARY OBJECTIONS

Defendant objects to plaintiff's use of evidence apparently obtained from the internet. (ECF No. 30 at 9 n.2.) "[I]t is well established that medical textbooks, treatises and professional articles are not freely admissible in evidence to prove the substantive or testimonial facts stated therein, since they are subject to the hearsay rule." Hickock v. G.D. Searle & Co., 496 F.2d 444, 446 (10th Cir. 1974). A statement from a medical textbook, treatise or professional article may be admissible if the statement is established to be from a reliable medical authority and is relied upon by an expert witness. See Fed. R. Evid. 803(18); Tart v. McGann, 697 F.2d 75, 78 (2d Cir. 1982).

Even if one or more of the internet articles submitted by plaintiff could be shown to be a reliable medical authority, plaintiff presented no expert witness who relied upon any of the articles. In addition, the Court reviewed plaintiff's exhibits and determined that nothing in the exhibits demonstrate that plaintiff's January 30, 2024 blood test results, drawn on January 29, 2024, were outside the normal range or that plaintiff had an infection. Thus, in evaluating the motion for summary judgment, the court will not consider statements from articles found on internet sites. See generally Combs v. Washington, 660 F. App'x 515, 518 (9th Cir. 2016) ("district court did not abuse its discretion when it excluded as hearsay several Internet articles

about [plaintiff's] medical conditions"); Taylor v. Patel, 2017 WL 3315319, at *2 (E.D. Cal. Aug. 3, 2017) (sustaining hearsay objection to pro se plaintiff's printout from internet site discussing the "purposes and functions of an X-ray and an MRI"); Nguyen v. Biter, 2015 WL 5232163, at *9 (E.D. Cal. Sept. 8, 2015) (excluding, on hearsay grounds, "written information on arsenic, apparently obtained from the internet and perhaps a book").

## VII. DISCUSSION

### A. Serious Medical Need

Keloids are raised overgrowths of scar tissue or "over scarring" that occur at the site of a prior wound. (Undisputed Material Fact ("UDF") 5.)[5] Plaintiff has had keloids since 1977 and has complained that they are chronically infected. (UDF 6.) Plaintiff has keloids on his face, neck, chest and right shoulder. (ECF No. 1 at 8.) This Court finds that keloids are a serious medical condition.

### B. December 22, 2023 Appointment

Plaintiff's first appointment with defendant was scheduled in response to plaintiff's December 16, 2023 sick call request to have his bug bite evaluated. (UDF 1, 2.) The appointment was via telemedicine, where defendant Dr. Mansour could see plaintiff on a video screen. (UDF 1.) In addition to treating plaintiff for the suspected bug bite, defendant Dr. Mansour also confirmed that plaintiff was prescribed hydrogen peroxide and wound care treatment for his keloids. (UDF 3.)

Plaintiff argues that defendant Dr. Mansour's negative attitude and verbal abuse demonstrate the doctor's "deliberate indifference." (ECF No. 29 at 8.) But plaintiff identifies nothing defendant Dr. Mansour did or did not do on December 22, 2023 that constitutes deliberate indifference to plaintiff's serious medical needs. (Pl.'s Dep. Tr. 17:10-17, 18:3-6.) Plaintiff admits he has keloids on his chest as well as his face and neck, so asking plaintiff to

---

[5] Defendant provided a statement of undisputed facts. (ECF No. 26-1.) Plaintiff did not provide a similar statement, opting instead to provide a statement of disputed facts. (ECF No. 29 at 6.) Where plaintiff failed to properly address defendant's assertion of fact as required, this Court considers the fact undisputed. See Fed. R. Civ. P. 56(e)(2). Hereafter, all references to "UDF" are to the undisputed facts provided by defendant. (ECF No. 26-1.)

disrobe so the doctor could view the keloids was appropriate. Further, the record shows that plaintiff was provided hydrogen peroxide on November 9, 2023, before plaintiff's appointment with defendant Dr. Mansour. (ECF No. 1 at 10.) Plaintiff provides no evidence that the provision of hydrogen peroxide was at issue during the December 22, 2023 appointment. Plaintiff identifies no genuine dispute of material fact as to defendant Dr. Mansour's medical care on December 22, 2023, and he is entitled to summary judgment on this claim.

C. <u>January 25, 2024 Appointment</u>

On January 25, 2024, plaintiff saw defendant Dr. Mansour for the second time, again via telemedicine. It is undisputed that plaintiff complained that the keloids on his face and neck were infected and he requested antibiotics. (UDF 4.) Plaintiff declares that he told defendant Dr. Mansour and nursing staff that he was in "extreme pain." (ECF No. 1 at 13.)

*1. Alleged Refusal to Provide Antibiotics or Otherwise Treat Keloids*

First, plaintiff alleges that defendant Dr. Mansour refused to provide antibiotics or otherwise treat plaintiff's keloids. (ECF No. 1 at 11, 13.) Instead, defendant Dr. Mansour ordered a blood test to determine if plaintiff had an infection, which plaintiff knew would take days or weeks to receive the results. (<u>Id.</u> at 11.)

At this appointment defendant Dr. Mansour used the magnifying capabilities on the telemedicine video to look at the keloids, but he did not see signs of infection. (UDF 8.) Nursing staff also did not see signs of infection. (UDF 9.) Defendant Dr. Mansour called on his colleague, Dr. Largoza, to look at plaintiff's keloids in person. (UDF 10.) Beginning in 2022, Dr. Largoza had treated plaintiff many times, and was familiar with plaintiff's medical history and keloids, and was directly involved in past treatment of plaintiff's infections. (UDF 11.) On January 25, 2024, Dr. Largoza also did not see any signs of infection. (UDF 12.) Despite the observations of these two doctors and nursing staff, plaintiff insisted he had an infection, so defendant Dr. Mansour ordered a blood test to determine if there was an infection. (UDF 13.) In addition, defendant Dr. Mansour ordered pain medication, naproxen, for plaintiff. (UDF 14.)

These undisputed facts demonstrate that defendant Dr. Mansour did provide medical treatment to plaintiff on January 25, 2024. In addition to viewing plaintiff's keloids, the doctor

asked nursing staff and Dr. Largoza, who had treated plaintiff's keloids in the past, to look at the keloids as well. Then, despite both doctors' opinions that plaintiff did not have an infection, defendant Dr. Mansour ordered a blood test and pain medication for plaintiff. While it is clear that plaintiff disagrees with the treatment provided by defendant Dr. Mansour, absent competent medical evidence to the contrary, plaintiff's disagreement is insufficient to show deliberate indifference. "[A] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a [§ ] 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). That plaintiff was provided different treatment by different doctors in the past fails to demonstrate that the treatment provided by defendant Dr. Mansour was "medically unacceptable under the circumstances." Jackson, 90 F.3d at 332. This is particularly true in light of the consult provided by Dr. Largoza, who had previously treated plaintiff for his keloids. Further, in plaintiff's deposition, plaintiff confirmed that at the end of his appointment he received hydrogen peroxide and antibiotic ointment, although he wasn't sure he received the ointment from defendant Dr. Mansour. (Pl.'s Dep. Tr. at 27:1-7.) Plaintiff stated that at the January 25, 2024 appointment he was hoping "to get what I've been getting for decades in order to abate these infections before they get real bad." (Id. at 27:8-14.) Upon clarification, plaintiff confirmed that while the doctor gave plaintiff hydrogen peroxide and antibiotic ointment, he didn't renew it for a long enough period. (Id. at 28:9-13.) Plaintiff noted that at RJD, he was given a one year prescription to the antibiotic ointment, but they don't do that at CSP-SOL. (Id. at 27:24-28:5.) But again, these differences in prescription procedures, without more, do not constitute deliberate indifference.

Plaintiff argues that during the January 25, 2024 appointment, defendant Dr. Mansour should have taken a direct culture from the keloids to properly diagnose an infection. (ECF No. 29 at 4, 11, 16, 17.) But because defendant Dr. Mansour did not see an infection on January 25, 2024, plaintiff's argument is unavailing. If the doctor did not see an infection, there would be no reason to take a culture. Moreover, defendant Dr. Mansour opined that taking a direct culture is not the best or safest way to diagnose an infection, and because both samples must be sent to the lab for testing, a culture is not necessarily faster. (ECF No. 26-2 at 3 ¶ 10.) Plaintiff argues that a

doctor at RJD previously took a culture. (ECF No. 29 at 10.) But, as noted above, a difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. See Toguchi, 391 F.3d at 1058; Sanchez, 891 F.2d at 242. In any event, just because a culture was previously taken does not mean that a culture is the only treatment option available. Further, plaintiff fails to provide competent medical evidence that a culture would be appropriate if the doctor did not see an infection, or that a culture was the only recommended diagnostic tool for keloid infections.

Finally, even if both defendant Dr. Mansour and Dr. Largoza misdiagnosed the infection, such misdiagnosis would at most demonstrate negligent misdiagnosis, which does not rise to the level of deliberate indifference. See Wilhelm v. Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012) (negligent misdiagnosis does not establish deliberate indifference).

Defendant is entitled to summary judgment on this claim.

*2. Alleged Failure to Provide Blood Test Results*

Next, plaintiff alleges that defendant Dr. Mansour then failed to provide plaintiff with the blood test results. (ECF No. 1 at 11.) In his deposition, plaintiff testified that he never got the results. (Pl. Dep. Tr. 28:16.) Plaintiff also testified that "they kept sending [him] some forms," but they weren't the usual forms he received advising him of test results. (Id. at 28:17-20; 29:1-8.) In his declaration, Dr. Largoza explained the various ways prisoners can obtain test results: "the inmate can obtain the results by acquiring their own medical records[;] blood test results are usually discussed at the inmate's next medical appointment[;] and medical staff, not the primary care provider, can also send a letter to an inmate." (ECF No. 26-3 at 2-3 ¶ 8.) Defendant Dr. Mansour declares that he is not responsible for releasing the blood test results; they are automatically added to plaintiff's medical records for him to see, he should receive an automatic notice when the results are uploaded, and the doctor could not personally update plaintiff on the blood test results because plaintiff refused to see the doctor after January 25, 2024. (ECF No. 26-2 at 3-4 ¶ 11.) Plaintiff does not dispute these facts, but instead objects that improper forms were used, and provides copies of forms used in the past. (ECF No. 29 at 11.) Plaintiff's objections regarding the form itself are not relevant, because the form used does not alter the test results.

Thus, plaintiff's objections as to the form itself do not constitute a genuine dispute of material fact. Further, plaintiff could have viewed his medical records to see the results, and he could have made an appointment with medical staff to obtain the results. This claim also fails because it is undisputed that plaintiff refused to see defendant Dr. Mansour after the January 25, 2024 appointment. (UDF 20; Pl. Dep. Tr. 26:17-25.)

*3. Alleged Failure to Provide Oral Antibiotics After the Blood Test*

Finally, plaintiff alleges that defendant Dr. Mansour then failed to provide plaintiff oral antibiotics even after the blood test results showed plaintiff had an infection. (ECF No. 1 at 16.) In his deposition, plaintiff testified that he knew he had an infection because his keloid "busted the next day" (the day after his last appointment with defendant Dr. Mansour), and "erupted pus and blood." (Pl. Dep. Tr. 29:19-21; ECF No. 1 at 11.) Plaintiff asked the law librarian to look up the terms used in the form plaintiff was provided. (ECF No. 29 at 10-11 (citing ECF No. 29 at 43-48).)

This claim is unavailing because the medical evidence confirms plaintiff did not have an infection, so no oral antibiotics were required. Plaintiff's claim that he had an infection was not confirmed by the blood test performed after his last appointment with defendant Dr. Mansour. Indeed, Dr. Largoza declares that:

> a review of plaintiff's blood test results show that he did not have a present infection or an infection within the last week. A present or recent infection would show an elevated white blood cell count, which plaintiff did not have. All of plaintiff's blood test results were within normal range.

(ECF No. 26-3 at 2 ¶ 7.) Defendant Dr. Mansour saw the lab results on January 30, 2024, and also declares plaintiff's white blood cell count was within normal range, and all of the results from this blood test were in normal range. (ECF No. 26-2 at 3 ¶ 7.) The hematology results from the blood test collected on January 29, 2024 reflect plaintiff's white blood cell count was 4.2, and the reference range was 3.8 to 10.8, confirming plaintiff's white blood cell count was within normal limits. (Id. at 24.) Plaintiff provided no competent medical evidence to the contrary. Because the lab test showed plaintiff did not have an infection, no oral antibiotics were required, and there remains no dispute of material fact as to plaintiff's blood test claim. These blood test

results also support defendant Dr. Mansour's reasonable belief that plaintiff had no infection requiring oral antibiotics and appropriately treated him on January 25, 2024.

D. Subsequent Events

In his complaint, plaintiff states that the next morning, January 26, 2024, after the facial/neck keloid "erupted with blood and pus," he walked to the clinic to seek a wound culture. (ECF No. 1 at 11.) Plaintiff talked to an unidentified nurse who went and spoke to an unidentified doctor. (Id.) The nurse told plaintiff that the doctor "said the culture would be contaminated if he took it direct." (Id.) Plaintiff's allegations as to these subsequent events are too vague and conclusory to state a cognizable deliberate indifference claim. Plaintiff alleges no facts tying defendant Dr. Mansour to this incident, and it is undisputed that plaintiff refused to see defendant Dr. Mansour after the January 25, 2024 appointment. Finally, this claim fails because according to Dr. Largoza's review of the lab results, the blood test confirmed that plaintiff did not have an infection on January 25, 2024.

E. Delayed Receipt of Hydrogen Peroxide

In his complaint, plaintiff initially complains that his October 8, 2023 sick call slip requesting a refill of his normally issued hydrogen peroxide, used to clean his keloids, was not refilled until November 9, 2023. (ECF No. 1 at 10; see also ECF No. 29 at 2.) Immediately after, and before the holiday, plaintiff claims "another severe infection occurred." (Id.) However, in his complaint, plaintiff does not allege that defendant Dr. Mansour was responsible for such delay. (Id.) Indeed, plaintiff states his first appointment with defendant was on December 22, 2023. (Id.) As defendant argues, the delayed provision of hydrogen peroxide claim did not survive this Court's screening (ECF No. 30 at 5).

However, in his opposition, plaintiff now claims that defendant Dr. Mansour "didn't respond in a timely manner." (ECF No. 29 at 3.) Plaintiff claims he suffered "an extreme infection" during the one month period of delay, and had "to use soap and water which is not conducive to proper healing." (Id.) Plaintiff then claims his face and neck keloid is always infected -- "it is always mildly infected and gives off a noxious odor!" (Id.)

In reply, defendant Dr. Mansour provides evidence that nursing staff first evaluates such

health care requests, then meets with the patient, and then messages the doctor if necessary. (ECF No. 30-1 at 1 ¶ 3.) On October 24, 2023, defendant Dr. Mansour received a message from nursing staff about refilling plaintiff's medication. (Id. at 2 ¶ 4.) At that time, defendant Dr. Mansour had never met or evaluated plaintiff. (Id.) Therefore, defendant Dr. Mansour had to review plaintiff's extensive medical records, and renewed plaintiff's hydrogen peroxide prescription on November 9, 2023. (Id.) Defendant Dr. Mansour explained how important it is to review medical records before renewing medications for patients he had not seen before, and he was concerned about the effects of long-term hydrogen peroxide use, which he states is generally not recommended for long term use. (Id.) By comparison, after the doctor had previously evaluated plaintiff, defendant Dr. Mansour received a message from nursing staff on January 18, 2024, requesting a refill of plaintiff's hydrogen peroxide prescription, and the doctor renewed the prescription that same day. (Id.) Plaintiff adduced no evidence to rebut defendant Dr. Mansour's evidence concerning this time frame, or his concerns about the long-term use of hydrogen peroxide. Plaintiff identifies no other medical staff responsible for initially evaluating plaintiff's October 8, 2023 request. Plaintiff identifies no medical record showing he presented to the medical clinic complaining of severe pain during the delay attributable to defendant Dr. Mansour, and identifies no blood test results confirming he was suffering from an infection at that time. Therefore, plaintiff fails to identify a genuine dispute concerning this period of delay.

F. Alleged Verbal Abuse By Defendant Dr. Mansour

Plaintiff also renews his allegations that defendant Dr. Mansour verbally abused plaintiff during the December 22, 2023 telemedicine appointment. (ECF No. 1 at 10; ECF No.2-3.) However, as argued by defendant (ECF No. 30 at 5), this claim also did not survive this Court's screening. The claim was screened out because such allegations, standing alone, fail to state a cognizable civil rights claim. Allegations of harassment, embarrassment, and defamation are not cognizable under section 1983. Rutledge v. Arizona Bd. of Regents, 660 F.2d 1345, 1353 (9th Cir. 1981), aff'd sub nom. Kush v. Rutledge, 460 U.S. 719 (1983); see also Franklin, 662 F.2d at 1344 (allegations of harassment with regards to medical problems not cognizable). Nor are allegations of mere threats cognizable. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987)

(mere threat does not constitute constitutional wrong, nor do allegations that naked threat was for purpose of denying access to courts compel contrary result).

G. Defendant Is Entitled To Summary Judgment

Accordingly, this Court finds that defendant met his burden to demonstrate there is no genuine dispute as to any material fact. Plaintiff failed to rebut defendant's evidence with competent evidence. Therefore, defendant is entitled to judgment as a matter of law.

## VIII. QUALIFIED IMMUNITY

In the alternative, defendant argues that he is entitled to qualified immunity. (ECF No. 26 at 14-17.) Because this Court finds that defendant is entitled to summary judgment on plaintiff's Eighth Amendment claim, the Court declines to reach the alternative qualified immunity argument.

## IX. LEAVE TO AMEND

This Court has considered whether plaintiff should be granted leave to amend. However, in light of the record evidence, the Court finds it would be futile to grant plaintiff leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000); Schmier v. U.S. Court of Appeals for the Ninth Circuit, 279 F.3d 817, 824 (9th Cir. 2002) (recognizing "[f]utility of amendment" as a proper basis for dismissal without leave to amend).

## X. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case, and change defendant's name in the court docket to "Y. Mansour."

Further, IT IS RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 26) be granted;
2. Judgment be entered for defendant Dr. Y. Mansour; and
3. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 24, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/rush2183.msj